# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: MOTION TO COMPEL COMPLIANCE WITH SUBPOENA DIRECTED TO FINJAN HOLDINGS LLC | Miscellaneous Case No. |
| <u>Underlying Case in the Southern District of California</u>: | |
| FINJAN LLC,<br><br>     Plaintiff/Counter-Defendant,<br><br>v.<br><br>ESET, LLC and ESET, SPOL. S.R.O.,<br><br>     Defendants/Counter-Plaintiffs. | Case No. 3:17-cv-00183-CAB-BGS |

## MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
## COMPLIANCE WITH SUBPOENA DIRECTED TO FINJAN HOLDINGS LLC

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ...............................................................................................1

II.    BACKGROUND ................................................................................................2

III.   LEGAL STANDARD .........................................................................................5

IV.    ARGUMENT ......................................................................................................6

      A.   The Requested Documents Are Relevant to at Least Damages and Standing........ 6

      B.   Finjan Holdings's Privilege Log Is Defective. ...................................... 9

      C.   The Common Interest Exception to Waiver of Privilege Does Not Apply Here.. 11

V.     CONCLUSION.................................................................................................12

45886173.1

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*,
   265 F.3d 1294 (Fed. Cir. 2001)..................................................................................8

*Alloc, Inc. v. Unilin Beheer B.V.*,
   No. 02-C-1266, 2006 U.S. Dist. LEXIS 24148 (E.D. Wis. Mar. 24, 2006) ............................7

*Comcast Cable Communs., LLC v. Sprint Communs. Co.*,
   262 F. Supp. 3d 118 (E.D. Pa. 2017) ........................................................................7

*In re Denture Cream Prods. Liab. Litig.*,
   292 F.R.D. 120 (D.D.C. 2013).................................................................................5

*Fay Ave. Props., LLC v. Travelers Prop. Cas. Co. of Am.*,
   No. 11-2389-GPC(WVG), 2014 U.S. Dist. LEXIS 89614 (S.D. Cal. July 1,
   2014) ..............................................................................................................9

*Foreman v. United States*,
   792 A.2d 1043 (D.C. 2002) ...................................................................................9

*Fresenius Med. Care Holding, Inc. v. Baxter Int'l, Inc.*,
   224 F.R.D. 644 (N.D. Cal. 2004)..............................................................................7

*Integra Lifesciences I, Ltd. v. Merck KGaA*,
   331 F.3d 860 (Fed. Cir. 2003), *rev'd on other grounds*, 545 U.S. 193 (2005)........................7

*Intex Rec. Corp. v. Team Worldwide Corp.*,
   471 F. Supp. 2d 11 (D.D.C. 2007) .................................................................8, 11, 12

*In re Lindsey*,
   332 U.S. App. D.C. 357, 158 F.3d 1263 (D.C. Cir. 1998) ....................................................12

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009)...............................................................................7

*Mannina v. District of Columbia*,
   No. 1:15-cv-931, 2019 U.S. Dist. LEXIS 76260 (D.D.C. May 6, 2019)..............................6, 9

*Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC*,
   286 F.R.D. 8 (D.D.C. 2012)...................................................................................5

*In re Papst Licensing GMBH & Co. Kg Litig.*,
   252 F.R.D. 7 (D.D.C. 2008)....................................................................................8

**TABLE OF AUTHORITIES**
(*Continued*)

**Page(s)**

**Cases (*Cont'd*)**

*Ray v. CLH N.Y. Ave, LLC*,
No. 19-cv-2841-RCL, 2020 U.S. Dist. LEXIS 171389 (D.D.C. Sep. 17, 2020)......................6

*Regal Elecs., Inc. v. Pulse Eng'g, Inc.*,
No. 5:03-cv-1296 JW (RS), 2005 U.S. Dist. LEXIS 29955 (N.D. Cal. Nov. 16,
2005) ..................................................................................................................................9

*In re Sealed Case*,
308 U.S. App. D.C. 69, 29 F.3d 715 (D.C. Cir. 1994) ..........................................................12

*In re UMW Emple. Benefit Plans Litig.*,
159 F.R.D. 307 (D.D.C. 1994)..............................................................................................11

*Uniloc 2017 LLC v. Google LLC*,
No. 2:18-cv-00504-JRG-RSP, 2020 U.S. Dist. LEXIS 100416 (E.D. Tex. June
8, 2020) ...............................................................................................................................3

*Uniloc 2017 LLC v. Google LLC*,
No. 4:20-cv-04355-YGR, 2020 U.S. Dist. LEXIS 241045 (N.D. Cal. Dec. 22,
2020) ................................................................................................................................3, 8

*Uniloc USA, Inc. v. Apple Inc.*,
No. 19-cv-01692-EJD (VKD), 2020 U.S. Dist. LEXIS 137077 (N.D. Cal. July
30, 2020) .............................................................................................................................7

*Union Pac. Res. Grp., Inc. v. Pennzoil Co.*,
No. 97-64 JJF, 1997 U.S. Dist. LEXIS 24215 (D. Del. Aug. 12, 1997)..................................9

*Viasat, Inc. v. Space Sys.*,
No. 12-CV-0260-H (WVG), 2013 U.S. Dist. LEXIS 196700 (S.D. Cal. Jan.
14, 2013) ............................................................................................................................8

*VLSI Tech. LLC v. Intel Corp.*,
No. 6:19-CV-00254-ADA, 2019 U.S. Dist. LEXIS 227809 (W.D. Tex. Oct. 7,
2019) ...................................................................................................................................3

## TABLE OF AUTHORITIES
### (*Continued*)

**Page(s)**

**Other Authorities**

Federal Rules of Civil Procedure:
Rule 26 .................................................................................................................................5
Rule 26(b)(1)..........................................................................................................................5
Rule 34(b)(2)(C) ....................................................................................................................5
Rule 45(a)(1)(D) ....................................................................................................................5
Rule 45(d)(2)(B)(i).................................................................................................................5
Rule 45(e)(2)(A) ....................................................................................................................5

## I.   **INTRODUCTION**

ESET, LLC and ESET, spol. s.r.o. (together, "ESET") respectfully seek the assistance of this Court to compel compliance with a subpoena issued in connection with litigation pending in the Southern District of California in an action initiated by Finjan LLC, a wholly-owned subsidiary of Finjan Holdings LLC ("Finjan Holdings").  Finjan Holdings produced a defective privilege log and has simply refused to provide other (or indeed any) responsive documents.  This motion seeks to compel Finjan Holdings to comply with its obligations under Rule 45.

The underlying action involves a patent infringement suit initiated by Finjan[1] in 2016. Finjan is a wholly-owned subsidiary of Finjan Holdings[2].  On July 24, 2020, Finjan Holdings announced that it (and its wholly-owned subsidiary Finjan) was acquired by Fortress Investment Group LLC ("Fortress") for $43.9 million.[3]  *See* Declaration of Regis C. Worley, Jr. in Support of ESET, LLC and ESET, spol. s.r.o.'s Motion to Compel Compliance with Subpoena Directed to Finjan Holdings LLC ("Worley Decl."), Ex. A.  In its 10-Q filing for the period ending March 31, 2020, Finjan Holdings reported total current assets (not including intangible assets) of $36 million and identified 12 pending patent infringement actions in which Finjan was plaintiff, including the underlying action.  *See id*., Ex. B.   Not accounting for litigation costs in the March to July time-period, it appears that Finjan Holdings was acquired by Fortress for just $8 million more than Finjan Holdings's cash assets.  Finjan Holdings's sale price must necessarily have discounted the value of the 12 pending litigations, including the underlying litigation.

---

[1] Finjan Inc. initiated the action and later changed its name to Finjan LLC.  For purposes of the motion, this entity will be referred to simply as "Finjan."

[2] Finjan Holdings, Inc., the parent of Finjan, later underwent a name change to Finjan Holdings LLC.  For purposes of the motion, this entity will be referred to simply as "Finjan Holdings."

[3] A fully briefed motion to compel production of documents from Finjan has been pending in the underlying action since January 6, 2021; briefing also was recently completed on a motion to compel production by Fortress filed in the United States District Court for the Southern District of New York, where Fortress is located.

The valuation that Finjan Holdings attributed to its assets, including Finjan's patents and the pending litigations, is undoubtedly revealed in the requested documents. This information is directly relevant to the value of a reasonable royalty sought by Finjan in the underlying action. ESET's subpoena *duces tecum* seeks documents related to the acquisition, patent valuation, patent licensing, and other categories of documents. *See* Worley Decl., Ex. C. Finjan Holdings does not deny having responsive documents, but instead has refused to produce any documents, often (but not always) based on an extremely broad – and legally unsound – assertion of privilege. *See* Worley Decl., Ex. D, Responses 1-12 (each stating in part that Finjan Holdings "has no non-protected information responsive to this Request"), Responses 13-16 (each stating in part that Finjan Holdings "will not produce documents in response to this Request"). Additionally, though Finjan Holdings produced a document purporting to be a privilege log, that document suffers multiple defects, not the least of which is that it fails to identify attorneys. *See* Worley Decl., Ex. F (filed under seal). Finjan Holdings marked its privilege log as "Highly Confidential – Attorneys' Eyes Only" under the operative protective order and did not consent to ESET filing the document publicly. *Id.*; *id.*, ¶3.

In view of the foregoing, ESET requests that this Court issue an order compelling Finjan Holdings to produce or make available for *in camera* review those documents listed on its defective privilege log and to produce the remaining responsive documents, including those responsive to Requests 13-16, for which no plausible objection was made.

## II.    BACKGROUND

Finjan Holdings represented it "operates a cybersecurity business focused on three business lines: intellectual property licensing and enforcement, mobile security application development and investing in cybersecurity technologies and intellectual property." *See* Worley Decl., Ex. B. Finjan Holdings also made clear that although it has three wholly-owned subsidiaries, only Finjan

has financial significance.  *Id.* ("Revenues and operations are concentrated in Finjan; other subsidiaries were immaterial to the condensed consolidated financial statements for the three months ended March 31, 2020 and 2019.")

Fortress describes itself as an investment manager.  *See* https://www.fortress.com/about. Fortress's investments include patent holding companies that generate revenue by asserting and licensing patents.[4]  Fortress, directly or through its affiliates, is known to enter into relationships with its patent holding companies, the nature of which may be case dispositive.  For example, discovery in another patent infringement action revealed that a Fortress-owned plaintiff lacked standing to sue due to a revenue sharing agreement entered into with a Fortress entity.  *See Uniloc 2017 LLC v. Google LLC*, No. 4:20-cv-04355-YGR, 2020 U.S. Dist. LEXIS 241045, at *36-37 (N.D. Cal. Dec. 22, 2020).

Here, the underlying action was brought by Finjan, a non-practicing entity that is a wholly-owned subsidiary of Finjan Holdings.  *See* Worley Decl., ¶2.  Finjan alleges infringement of six patents, each of which has expired.[5]  *Id.*  During the course of the litigation, Fortress acquired Finjan Holdings.  *Id.*  In a recent filing, Finjan Holdings revealed that "it had engaged with 50 potential transaction partners over a two year period with several conducting extensive due diligence."  *See* Worley Decl., Ex. E, at 4.  Specifically, Finjan Holdings' Board of Directors

---

[4] *See, e.g., VLSI Tech. LLC v. Intel Corp.*, No. 6:19-CV-00254-ADA, 2019 U.S. Dist. LEXIS 227809, at *9 n.2 (W.D. Tex. Oct. 7, 2019) (in a patent infringement action brought by VLSI, the Court observed that "Fortress Investment Group LLC is a New York hedge fund that formed VLSI"); *Uniloc 2017 LLC v. Google LLC*, No. 2:18-cv-00504-JRG-RSP, 2020 U.S. Dist. LEXIS 100416, at *5 n.5 (E.D. Tex. June 8, 2020) (in a patent infringement suit filed by Uniloc, the court noted that Fortress "formed both Uniloc and Uniloc's parent, CF Uniloc Holdings LLC, funded Uniloc's patent assertion strategies, and appointed its own employees as officers and board members of Uniloc and CF Uniloc").
[5] The last patent to expire was U.S. Pat. No. 7,975,305 ("the '305 patent").  Movant's subpoena to Finjan Holdings was served while discovery pertaining to the '305 patent was open.

"engaged Atlas Technology Group LLC ('Atlas') as its financial advisor" and "authorized Atlas to begin outreach to potential transaction partners."  *See* Worley Decl., Ex. E, at 6.  Subsequently,

> Atlas contacted more than 50 parties to explore interest in a transaction with [Finjan Holdings], including a sale of [Finjan Holdings], potential acquisitions by [Finjan Holdings], and joint venture proposals involving combined management of patent portfolios. Of these, 11 parties entered into confidentiality agreements with Finjan, including Fortress. [citation omitted]

> Over the course of the next year, [Finjan Holdings] engaged in numerous discussions, negotiations and due diligence sessions with multiple potential suitors, including Fortress.

*See id*.  ESET seeks to obtain relevant documents communicated between Finjan Holdings, Fortress, and Atlas via the instant subpoena.  *See* Worley Decl., Ex. C.  The subpoena included 16 requests for documents and also included a copy of the governing protective order, which provides a mechanism by which Finjan Holdings may protect its confidential documents.  *See* Worley Decl., Ex. C.  The subpoena required compliance within this District.[6]  *Id*.

Finjan Holdings's counsel, who also represents Finjan, agreed to accept service of the subpoena.  *See* Worley Decl., ¶3.    The subpoena was served on February 2, 2021, and Finjan Holdings responded on February 11, 2021.  See Worley Decl., Ex. C; *id*. Ex. D.  Finjan Holdings did not move to quash or modify the subpoena, but instead provided its responses to the subpoena – consisting entirely of objections and refusals to produce documents.  *See* Worley Decl., Ex. D.

---

[6] The subpoena required compliance at ESET's counsel's office located at 700 6th Street NW, Washington, DC  20001, which is less than 100 miles from the address of Finjan Holdings LLC's registered office, located at 1209 Orange Street, City of Wilmington, Delaware 19801.  *See* Worley Decl., Ex. G.

Specifically, Responses 1-12 each stated in part that Finjan Holdings "has no non-protected information responsive to this Request," whereas Responses 13-16 each stated in part that Finjan Holdings "will not produce documents in response to this Request." *Id.* On February 23, 2021, Finjan Holdings provided a privilege log listing a mere 42 documents. *See* Worley Decl., Ex. F.

## III.   <u>LEGAL STANDARD</u>

A party seeking discovery from a non-party can obtain production of documents, electronically stored information, and tangible things through a subpoena. Fed. R. Civ. P. 45(a)(1)(D). If the recipient of a subpoena fails to comply with the subpoena, the serving party "may move the court for the district where compliance is required for an order compelling production." Fed. R. Civ. P. 45(d)(2)(B)(i). Pursuant to Fed. R. Civ. P. 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

"When deciding a motion to compel, a court must consider first whether the discovery sought is relevant." *In re Denture Cream Prods. Liab. Litig.*, 292 F.R.D. 120, 123 (D.D.C. 2013). "'The burden lies on the party resisting discovery to show that the documents requested are either unduly burdensome or privileged.'" *In re Denture Cream*, 292 F.R.D. at 123 (*quoting In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010)); *see also Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC*, 286 F.R.D. 8, 11 (D.D.C. 2012) ("The person objecting to production has a heavy burden to show that the subpoena should not be enforced."). "An objection must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C).

Pursuant to Rule 45, an entity that wishes to assert privilege "must … expressly make the claim" and must "describe the nature of the withheld documents … in a manner that … will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2)(A). "Specifically, for each document

withheld pursuant to a privilege, the log should 'state the basis upon which the privilege is claimed, the subject matter, number of pages, author, date created, and the identity of all persons to whom the original or any copies of the document were shown or provided.'" *Mannina v. District of Columbia*, No. 1:15-cv-931 (KBJ/RMM), 2019 U.S. Dist. LEXIS 76260, at *16 (D.D.C. May 6, 2019) (*quoting Loftin v. Bande*, 258 F.R.D. 31, 33 (D.D.C. 2009)).

## IV.   ARGUMENT

ESET seeks documents relating to Fortress's acquisition of Finjan Holdings that are relevant to the underlying action.  Finjan Holdings has not produced any documents in response to ESET's duly-served subpoena, and has provided a privilege log having multiple defects.  Finjan Holdings should be ordered to produce responsive documents and to produce or make available for *in camera* review those documents listed on its defective privilege log.

### A.   The Requested Documents Are Relevant to at Least Damages and Standing.

"In the context of discovery, relevance is construed broadly."  *Ray v. CLH N.Y. Ave, LLC*, No. 19-cv-2841-RCL, 2020 U.S. Dist. LEXIS 171389, at *11 (D.D.C. Sep. 17, 2020).  The documents sought by the subpoena are relevant to issues in the underlying action.

ESET served Finjan Holdings with a subpoena *duces tecum* that included 16 document requests, which may be summarized as follows: (a) patent valuation documents (Request Nos. 1, 13, and 16); (b) valuation of infringement damages for the asserted patents (Request Nos. 2, 8 and 15); (c) documents referring to the asserted patents (Request No. 3); (d) documents referring to ESET (Request Nos. 4 and 14); (e) allocation of the acquisition price (Request No. 5); (f) documents pertaining to the alleged infringement of an asserted patent (Request No. 6); (g) Finjan Holdings's communications to shareholders about the acquisition (Request No. 8); (h) documents pertaining to the alleged invalidity and enforceability of an asserted patent, including prior art and

post-grant proceedings (Request Nos. 9, 10, and 11); (i) consulting agreements with named inventors (Request No. 12).  *See* Worley Decl., Ex. C.

The requested documents are relevant to the issue of damages in the underlying litigation. Specifically, the licensing, valuation, patent scope, patent validity, financial, and other information relate to the "hypothetical negotiation" that "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began."  *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).

The requested valuation documents also are highly relevant to the issue of a reasonable royalty in the underlying action.  *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 871 (Fed. Cir. 2003) (purchase price should have been considered as a factor that would have considerably reduced the value of a hypothetical license), *rev'd on other grounds*, 545 U.S. 193 (2005); *Uniloc USA, Inc. v. Apple Inc.*, No. 19-cv-01692-EJD (VKD), 2020 U.S. Dist. LEXIS 137077, at *6 (N.D. Cal. July 30, 2020) ("The price paid to acquire all rights to a patent may be considered in assessing a reasonable royalty for a hypothetical license to the patent."); *Fresenius Med. Care Holding, Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 653 (N.D. Cal. 2004) ("The amount paid to acquire a company with desired patents, and the amount of the acquisition amount allotted to a particular patent is relevant to the establishment of a reasonable royalty."); *Comcast Cable Communs., LLC v. Sprint Communs. Co.*, 262 F. Supp. 3d 118, 144 (E.D. Pa. 2017) ("the value of the consideration given in exchange for the patent may be relevant to the determination of a reasonable royalty because it may bear on the amount that might have been accepted by a prudent patentee who was engaging in a hypothetical licensing negotiation"); *Alloc, Inc. v. Unilin Beheer B.V.*, No. 02-C-1266, 2006 U.S. Dist. LEXIS 24148, at *13 (E.D. Wis. Mar. 24, 2006) ("all documents relating to technology transfers concerning products accused of patent infringement

may be relevant for purposes of discovery"); *In re Papst Licensing GMBH & Co. Kg Litig.*, 252 F.R.D. 7, 8-10 (D.D.C. 2008) (patent holding entity whose business "is *litigation*, not invention or production" was required to respond to discovery request regarding persons with whom it discussed a license).

Documents referring to the asserted patents may relate to any or all aspects of the underlying action, including claim construction, claim scope, damages, and non-infringing alternatives, and therefore they are relevant. *See Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1307 (Fed. Cir. 2001) ("Federal Circuit law applies when deciding whether particular written or other materials are discoverable in a patent case, if those materials relate to an issue of substantive patent law"); *Intex Rec. Corp. v. Team Worldwide Corp.*, 471 F. Supp. 2d 11, 17-18 (D.D.C. 2007) (issues of prior art, patent term construction, scope of patent rights, and communications between a patent owner and a third party are relevant to the claims and defenses in an action involving patent infringement); *In re Papst Licensing GMBH & Co. Kg Litig.*, 252 F.R.D. 7, 10 (D.D.C. 2008) (patent owner's "positions with regard to the meaning and scope of the patents-in-suit are relevant").

Finjan Holdings's shareholder and investor communications also are relevant because they provide an overview of Finjan Holdings's assessment of the transaction and contractual issues that potentially affect Finjan's standing in the underlying action, and the valuations that Finjan Holdings attributed to the underlying litigation and Finjan's damages claims. *See, e.g., Uniloc 2017 LLC*, 2020 U.S. Dist. LEXIS 241045, at *36-37 (plaintiff in a patent infringement action lacked standing as a result of entering a revenue sharing agreement with Fortress); *see also Viasat, Inc. v. Space Sys.*, No. 12-CV-0260-H (WVG), 2013 U.S. Dist. LEXIS 196700, at *43 (S.D. Cal.

Jan. 14, 2013) ("requests for valuation documents, documents involving the [purchase agreement], and material concerning negotiations, are relevant to the instant litigation").

Because validity and enforceability of the '305 patent are directly at issue in the underlying action, documents relating to these topics, including Finjan Holdings's communications regarding a recent United States Patent and Trademark Office *ex parte* reexamination also are highly relevant.  *See Regal Elecs., Inc. v. Pulse Eng'g, Inc.*, No. 5:03-cv-1296 JW (RS), 2005 U.S. Dist. LEXIS 29955, at *7-10 (N.D. Cal. Nov. 16, 2005).

Finally, documents relating to whether and to what degree Finjan Holdings has entered into consulting agreements with any of the named inventors concern the issue of witness bias, which is "always relevant."  *See Foreman v. United States*, 792 A.2d 1043, 1054 (D.C. 2002).

Accordingly, the requested categories of documents are relevant.

## B.   Finjan Holdings's Privilege Log Is Defective.

Finjan Holdings provided a privilege log that is clearly defective.  For each document withheld for privilege, Finjan Holdings failed to provide a privilege log that at a minimum "state[s] the basis upon which the privilege is claimed, the subject matter, number of pages, author, date created, and the identity of all persons to whom the original or any copies of the document were shown or provided."  *See Mannina*, 2019 U.S. Dist. LEXIS 76260, at *16; *see also Fay Ave. Props., LLC v. Travelers Prop. Cas. Co. of Am.*, No. 11-2389-GPC(WVG), 2014 U.S. Dist. LEXIS 89614, at *9 (S.D. Cal. July 1, 2014) (setting forth 11 privilege log requirements in the Southern District of California); *Union Pac. Res. Grp., Inc. v. Pennzoil Co.*, No. 97-64 JJF, 1997 U.S. Dist. LEXIS 24215 (D. Del. Aug. 12, 1997) (discussing privilege log requirements).

Finjan Holdings's privilege log lists a mere 42 documents, but provides nearly no details regarding those documents, and certainly does not provide sufficient information to assess Finjan Holdings's privilege claim.  *See* Worley Decl., Ex. F.  For example, the log includes a table

showing names of individuals and their associated companies, but does not identify which individuals are attorneys or whom they represent.  *Id.*  And despite providing a table listing certain individuals, a majority of the log entries obscure the identities of the involved individuals, such as by identifying the "From/Author" as "***Multiple***, ***including*** … [certain identified individuals] ***and/or outside counsel***." *Id.* at nos. 2, 4, 15-19, 22-26, 29-34, 36-42 (emphasis added); *see also id.* at nos. 27-28, 34 listing the "From/Author" as "[certain identified individuals] ***and/or outside counsel***" (emphasis added).  Additionally, there are no entries whatsoever that identify the number of pages of each document.  Finally, to the extent that the log purports to identify the basis upon which the privilege is claimed and the subject matter of the document, the "Privilege Description" and "Privilege Type" columns each contain multiple near-identical entries.  *See*, *e.g.*, *id.* at nos.  2, 4, 22-26, 29-42.

On its face, the log cannot be accurate or complete.  While the document lists 42 documents and includes a chart identifying 28 people with seven different companies, ***no one*** is identified as acting on behalf of ***Finjan Holdings***.  *See* Worley Decl., Ex. F.  There is no explanation how Finjan Holdings came into possession of 42 privileged documents if, as states in its purported privilege log, no one from Finjan Holdings authored, sent, or received any of the logged documents!  And because Finjan Holdings admitted that "it had engaged with 50 potential transaction partners over a two year period with several conducting extensive due diligence,"[7] the privilege log necessarily must not include any of the documents exchanged with those entities, directly or through Atlas, or else it improperly fails to identify Finjan Holdings's involvement.  In any event, Finjan Holdings's privilege log simply cannot be accurate or complete.

---

[7] *See* Worley Decl., Ex. E, at 4.

To the extent that any privilege may have existed, the privilege log reveals such privilege was lost when the documents were provided to third parties.  "It is well settled that any disclosure of documents inconsistent with the confidential nature of the attorney-client relationship waives the attorney-client privilege not only as to the documents actually disclosed, but also as to all other communications related to the same subject matter." *In re UMW Emple. Benefit Plans Litig.*, 159 F.R.D. 307, 310 (D.D.C. 1994).  Here, the privilege log shows that document numbers 27-42 purport to contain "Attorney-Client Communication" but were each disclosed to a "Highly Confidential Third Party."  These disclosures are consistent with Finjan Holdings's contact with potential suitors through Atlas "to explore interest in a transaction with the Company, including a sale of the Company, potential acquisitions by the Company, and joint venture proposals involving combined management of patent portfolios." *See* Worley Decl., Ex. E, at 6 (noting that 11 parties, including Fortress, entered into confidentiality agreements with Finjan Holdings).  As such, any privilege that potentially existed was waived.

### C.    The Common Interest Exception to Waiver of Privilege Does Not Apply Here.

Although a common interest exception to the general waiver rule exists for participants in a common litigation defense, the criteria for that exception is not met here.  "[T]he common interest doctrine protects communications between parties that have entered into an agreement to establish a common defense strategy in connection with actual or prospective litigation." *Intex Rec. Corp.*, 471 F. Supp. 2d at 16.

Assuming *arguendo* that Finjan Holdings could establish privilege – which it cannot –  the privilege log fails to establish that a common interest exception exists that would prevent the waiver of privilege.  "As a usual rule, disclosure of attorney-client or work product confidences to third parties waives the protection of the relevant privileges; however, when the third party is a lawyer whose client shares an overlapping 'common interest' with the primary client, the

privileges may remain intact." *In re Lindsey*, 332 U.S. App. D.C. 357, 158 F.3d 1263, 1282 (D.C. Cir. 1998); *see also In re Sealed Case*, 308 U.S. App. D.C. 69 n.5, 29 F.3d 715, 719 (D.C. Cir. 1994) ("The joint defense privilege protects communications between two or more parties and their respective counsel if they are engaged in a joint defense effort."). "The party asserting the privilege must show: (1) the communications were made in the course of a joint defense effort; (2) the statements were designed to further the effort; and (3) the privilege has not been waived." *In re Sealed Case*, 308 U.S. App. D.C. 69 n.5, 29 F.3d 715, 719 (D.D. Cir. 1994). Here, the privilege log does not provide any evidence of a joint defense, but instead reveals the exchange of document consistent with communications with potential suitors to explore interest in a possible transaction with Finjan Holdings. Such communications are outside the common interest doctrine. *Intex Rec. Corp.*, 471 F. Supp. 2d at 16-17.

It is notable that Finjan Holdings is not listed as an author or recipient of any of the documents. Thus, it is inexplicable that any of the listed documents could have been designed to further the efforts of Finjan Holdings as a joint defendant. Moreover, even taking Finjan Holdings's privilege log at face value, the log reveals that the parties did not establish a common interest agreement until ***August 2020, after the July 2020 acquisition*** by Fortress. *See* Worley Decl., Ex. F, no. 21. Thus, any earlier-dated documents could not be subject to a common interest exception. *See Intex Rec. Corp.*, 471 F. Supp. 2d at 17.

In light of all the above, ESET requests that the documents listed in Finjan Holdings's privilege log, other responsive documents, and those not listed but provided to other suitors, be produced and/or subjected to *in camera* review.

V.     **CONCLUSION**

Finjan Holdings improperly failed to produce documents in response to a duly-served subpoena. Further, it provided a shoddy privilege log that fails to identify attorneys and their

clients, the number of pages of each document, the identities of the authors, and other necessary components.  ESET requests that the Court order Finjan Holdings to produce or make available for *in camera* review those documents identified on its privilege log and to produce all other responsive documents being withheld.


Dated:  March 16, 2021                              Respectfully submitted,


                                                          LEWIS S. WIENER (D.C. Bar. 414479)
                                                              LewisWiener@eversheds-sutherland.us
                                                          NICOLA A. PISANO (*pro hac vice* forthcoming)
                                                              nicolapisano@eversheds-sutherland.us
                                                          REGIS C. WORLEY (*pro hac vice* forthcoming)
                                                              regisworley@eversheds-sutherland.us
                                                          EVERSHEDS SUTHERLAND (US) LLP
                                                          12255 EL CAMINO REAL, SUITE 100
                                                          SAN DIEGO, CA 92130
                                                          TELEPHONE:  (858) 252-6502
                                                          FACSIMILE:  (858) 252 -6503

                                                          *Attorneys for Defendants/Counter-Plaintiffs*
                                                          *ESET, LLC and ESET, SPOL. S.R.O*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served on Finjan

Holdings LLC via electronic mail at Finjan-ESET_Fish-Service@fr.com and Amon@fr.com and

via U.S. Mail to counsel for Finjan Holdings LLC and the Plaintiff in the underlying action

addressed as follows:

**<u>VIA U.S. MAIL</u>**

Juanita Brooks (brooks@fr.com)
Roger A. Denning (denning@fr.com)
Jason W. Wolff (wolff@fr.com)
Michael A. Amon (amon@fr.com)
K. Nicole Williams (nwilliams@fr.com)
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Telephone:     (858) 678-5070
Facsimile:      (858) 678-5099

**<u>COURTESY COPY VIA ELECTRONIC MAIL</u>**:

Lawrence Jarvis (jarvis@fr.com)
FISH & RICHARDSON P.C.
1180 Peachtree St., NE, 21st Floor
Atlanta, GA 30309
Telephone:     (404) 892-5005
Facsimile:      (404) 892-5002

I declare under penalty of perjury of the laws of the United States of America that the

foregoing is true and correct.

Dated:  March 16, 2021                          Respectfully submitted,

LEWIS S. WIENER (D.C. Bar. 414479)
      LewisWiener@eversheds-sutherland.us